**Ex parte Alton John RAWLINSON.**

**No. 72757.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 18, 1997.

*OPINION*

PER CURIAM.

Applicant was convicted of burglary of a habitation, and the jury assessed his punishment at confinement for ninety-nine years. Applicant has filed this application pursuant to Article 11.07, V.A.C.C.P.

Applicant contends he was denied effective assistance of counsel on appeal by his counsel's abandonment of the appeal without notice. Before we can decide this issue, we must examine whether this Court has the authority to address the merit of Applicant's claim. Applicant filed a previous application under Art. 11.07 claiming there was an erroneous deadly weapon finding in the instant case. This Court granted relief in Applicant's initial habeas application and ordered Applicant's deadly weapon finding deleted. Ex parte Rawlinson, 807 S.W.2d 752 (Tex.Cr. App.1991).

Article 11.07 was amended by the legislature during the 74th Legislative Session. That statute now limits the number of post-conviction habeas corpus applications for an individual that this Court may consider. In pertinent part, the statute provides as follows:

> **Sec. 4.** (a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

Art. 11.07, § 4, V.A.C.C.P. This amendment to the statute applies to applications for a writ of habeas corpus filed on or after September 1, 1995.

Applicant's initial habeas application was received by this Court on April 30, 1991. As stated previously, we granted relief on May 15, 1991. The instant application was filed in the trial court on September 17, 1996, and received by this Court on November 1, 1996. The first issue which must be addressed is whether Applicant's first application was "challenging the same conviction" for purposes of Art. 11.07, § 4.

The term "conviction" is not specially defined in the Code of Criminal Procedure.

Article 3.01, V.A.C.C.P., states that "all words, phrases, and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined." Therefore, we should look to the commonly accepted definition of the term "conviction." BLACK'S LAW DICTIONARY 333, 334 (6th ed.1990), defines the term "conviction" as follows:

> I n a general sense, the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged. The final judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere, but does not include a final judgment which has been expunged by pardon, reversed, set aside, or otherwise rendered nugatory.
>
> The final consummation of the prosecution including the judgment or sentence, or as is frequently the case, the judgment or sentence itself.

■ This Court has also defined the term "conviction," as it relates to motions for new trial or a motion in arrest of judgment. In Ex parte Laday, 594 S.W.2d 102 (Tex.Cr. App.1980), we defined a "conviction" as an adjudication of guilt and an assessment of punishment. The Court went on to say that "in its basic form a conviction consists of a verdict of conviction and a judgment on the verdict." *Id.* at 104. The term "conviction" has been defined as far back as Arcia v. State, 26 Tex.App. 193, 9 S.W. 685 (1888). In *Arcia,* the Court of Appeals noted that

> ... In the absence of any statutory provisions affecting this question, we would hold, in accordance with what seems to be the well-settled rule, that a verdict followed by a judgment renders the conviction complete, and the disqualification at once attaches; but in no case attaches until judgment has been rendered upon the verdict. Desty, Crim.Law, § 49b, note 11; Whart.Crim.Ev. § 398, note 6....

Both the commonly accepted definition and the definition previously adopted by this Court show the term "conviction" encompasses the judgment and sentence of the trial court. Applicant's first application contended the *judgment* in his case reflected an improper finding of a deadly weapon made by the trial court. Specifically, Applicant contended the deadly weapon finding was improper because the jury, not the trial court, assessed punishment. If a deadly weapon finding is part of an applicant's judgment, an attack on a deadly weapon finding is an attack on the conviction under this Court's previous definition.

■ However, the Court must also look at the intent of the Legislature when they wrote § 4 into law. We have previously held that the intent of § 4 was to limit an applicant filing an application for a writ of habeas corpus under Article 11.07, § 1, V.A.C.C.P., to "one bite at the apple." [1] Ex parte Torres, 943 S.W.2d 469 (Tex.Crim.App.1997). In *Torres,* the applicant's initial application resulted in the granting of an out of time appeal and the dismissal of his remaining claims. *Torres,* 943 S.W.2d at 474. This Court found that the Applicant did not receive his "one bite at the apple" as it was not a "full bite." *Ibid.* We have held that a "full bite at the apple" means a final disposition of an initial writ relating to the merits of all the claims raised. We therefore conclude that the Legislature's definition of a final disposition of an attack on a "conviction" for purposes of § 4 is an attack on a specific cause number in which all issues which were raised have been dealt with on their merits.

■ In Applicant's initial application for a writ of habeas corpus all claims were addressed on their merits. Therefore, this application is an attack on the same conviction for purposes of § 4. We now look at whether Applicant has met the exceptions to dismissal

1. The sponsor of the bill in the House of Representatives, Representative Gallego, put emphasis on the theory of "one bite at the apple":

> And we tell individuals that, everything that you can possibly raise the first time, we expect you to raise it initially, one bite of the apple, one shot.... I think we'll have less filed, because what we're attempting to do here is to say, raise everything at one time. If you have to stick the kitchen sink in there, put it all in there. And, we will go through those claims, one at a time, and make a decision, but none of this, one—one—every week you file a new petition which is currently basically what happens. House floor, S.B. 440, May 18, 1995, Tape 166, Side A.

under Art. 11.07, § 4(a)(1) or (2). Applicant claims the instant application is not subject to dismissal under § 4 because he thought his case was still on appeal at the time of the filing of his initial application and he could not have known this claim was available. Under the first exception to § 4, an Applicant must show the current claims and issues have not been and could not have been presented previously because the factual or legal basis for the claim was unavailable on the date the Applicant filed the previous application.[2]

■ Applicant was convicted in the instant case on October 6, 1980, and according to the application itself, notice of appeal was filed by counsel on October 9, 1980. Approximately ten years later, Applicant filed his first application attacking the deadly weapon finding in the instant case. Applicant then waited five more years, approximately sixteen years after his conviction, to file this subsequent application. Applicant contends his claim that counsel abandoned his appeal was previously unavailable to him, under § 4(a)(1), as he "was not alerted that the appeal had been abandoned until he received communication from Deputy Clerk Cathy Smith on or about January 16, 1996."[3] However, Applicant does not show why he was unable to ascertain the status of his appeal before the filing of his first application which occurred a full ten years after his notice of appeal was filed.[4] The Applicant could have written the district clerk or the appellate court any time during the decade before the filing of his first habeas application and ascertained the status of his appeal. The fact Applicant chose to remain ignorant of the status of his appeal for sixteen years is not an exception to dismissal under § 4. Applicant has not shown this issue has not been and could not have been presented previously because the factual or legal basis for the claim was unavailable on the date the Applicant filed his initial application.

Applicant has not shown that he qualified for an exception when he filed this subsequent application. Therefore, this Court may not consider the merits of his claim and the instant application is dismissed pursuant to § 4.

PRICE, Judge, dissenting.

Applicant filed this post-conviction application for a writ of habeas corpus in the trial court, which was then forwarded to this Court pursuant to Article 11.07 of the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 11.07, § 3(c) (Vernon Supp.1997).[1] In 1980, Applicant was convicted of burglary of a habitation and sentenced to ninety-nine (99) years in prison. Applicant's counsel filed a notice of appeal but failed to take further action on the appeal. No direct appeal was filed.

Here, Applicant contends that he was denied the effective assistance of counsel on appeal because applicant's counsel abandoned his appeal without notifying him. The majority holds that applicant's writ is procedurally barred under Section 4 of Article 11.07 because this writ represents applicant's second challenge to his conviction. Consequently, they dismiss applicant's writ.

Believing that the majority's definition of a "challenge to a conviction" under Section 4 of Article 11.07 is overly narrow, I dissent.

## I. Applicant's Claims

This is Applicant's second application under Article 11.07 pertaining to this cause. In his first application, applicant claimed his judgment reflected an erroneous affirmative finding of a deadly weapon. We granted relief and ordered the deletion of the affirma-

---

**2.** Applicant does not claim his application is precluded from dismissal under Art. 11.07, § 4(a)(2), V.A.C.C.P.

**3.** Applicant is referring to a copy of his notice of appeal he received from the District Clerk's Office of Bastrop County.

**4.** Article 11.07, § 4(c), V.A.C.C.P., states that for purposes of Subsection (a)(1), a factual basis of a

claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertained through the exercise of reasonable diligence on or before that date.

**1.** Unless otherwise indicated, all references to articles are those in the Texas Code of Criminal Procedure.

tive finding. *Ex parte Rawlinson*, 807 S.W.2d 752 (Tex.Crim.App.1991).

On September 17, 1996, Applicant filed the instant application in the trial court. In it, he contends that he was denied the effective assistance of counsel when counsel abandoned applicant's appeal without informing applicant. The trial court made no findings of fact or conclusions of law and entered no recommendation on applicant's writ. This Court received applicant's writ on November 1, 1996.

## II. Article 11.07's Section Four Procedural Bar

To avoid the procedural bar of Section 4 of Article 11.07, applicant argues in his application that a prior writ contesting an erroneous affirmative finding "was not an attack on the legality of the conviction." He also claims that this is not a subsequent writ because his initial writ was filed prior to the effective date of Section 4 of Article 11.07. Lastly, he contends that Section 4 does not bar this application since he believed his direct appeal was pending when he filed his initial writ.

### A. Defining "Challenge to a Conviction"

We filed and set this cause to determine whether the instant application is barred by Article 11.07, § 4. Specifically, we must determine whether, under § 4, Applicant's "initial application challeng[ed] the same conviction" as the instant application, since the initial application pertained only to Applicant's erroneous affirmative finding.

Article 11.07, § 4, provides in pertinent part as follows:

Sec. 4. (a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application *challenging the same conviction*, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because

the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

Art. 11.07, § 4(a)(1) & (2). (emphasis added).

The starting point in analyzing the meaning of a statute is the language of the statute itself. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). When a statute is clear and unambiguous, we apply the plain meaning of its words. *Ramos v. State*, 934 S.W.2d 358, 364 (Tex.Crim.App.1996), *cert. denied*, — U.S. —, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997); *Boykin*, 818 S.W.2d at 785. When, however, the words are ambiguous, or the plain meaning of the words would lead to an absurd result which the legislature could not possibly have intended, we look to extratextual factors to ascertain the statute's meaning. *Boykin*, 818 S.W.2d at 785.

The phrases "challenge to a conviction" or "challenging a conviction" are not defined in Article 11.07 or in any other article in the Code of Criminal Procedure, nor are they defined in any other Texas statute. It is necessary, therefore, to consider the definitions of the individual words. According to Black's Law Dictionary, the key words may be defined as follows:

Challenge. To object or except to; to formally call into question ... the sufficiency or validity of an instrument; to call or put in question; to put into dispute; ....

Conviction. In a general sense, the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged. The final consummation of the prosecution including the judgment or sentence, or as is frequently the case, the judgment or sentence itself. The stage of a criminal proceeding where the issue of guilt is determined.

BLACK'S LAW DICTIONARY (6th ed.1990).

Although the Code of Criminal procedure does not define "conviction," the Code significantly narrows the meaning given to "conviction" in the context of a criminal proceeding.

Under Article 42.01, for instance, a "judgment" is defined, in part, as "the written declaration of the court signed by the trial judge and entered of record showing the *conviction* or acquittal of the defendant." Art. 42.01 § 1 (emphasis added). Throughout Article 42.01 the term "conviction" refers to the jury's decision of guilt—again, a limited view of the term. *Id.* at § 1(8), (9), (10), (13), (14) & (27).

This is not, however, the Court's first attempt to define the term "conviction." While dissenting, former Judge Teague sagely noted that "considerable force can be put behind the proposition that [conviction] means different things in different statutes." *Ex parte Renier,* 734 S.W.2d 349, 365 (Tex.Crim.App. 1987) (Teague, J., dissenting) (discussing definition of "final conviction" under Article 11.07). He explained that "an argument can be made that the word means 'verdict of guilt' in some places and 'judgment on the verdict of guilt' in others." *Id.* (citations omitted). And now, I too agree with Judge Teague's conclusion that this Court has most often "construed the term 'conviction' to mean a judgment of guilt and the assessment of punishment." *Id.* (citations omitted).

### B. Affirmative Findings

Based on these definitions, a challenge to a conviction would appear to be limited to claims regarding "the final consummation of the prosecution," "the judgment or sentence that the accused is guilty as charged," or "a judgment of guilt and the assessment of punishment." This interpretation would exclude matters such as an affirmative finding from the ambit of § 4, because an affirmative finding issue does not call into question the validity of the prosecution or judgment of guilt; rather, it questions issues arising after the completion of the prosecution. For instance, the existence of an affirmative finding affects a defendant's eligibility for parole—it does not alter the jury's verdict or the actual punishment assessed.

It is true that claims regarding affirmative findings are cognizable under Article 11.07.

See, *e.g., Ex parte Garcia,* 682 S.W.2d 581 (Tex.Crim.App.1985). In order to raise these claims, like claims pertaining to trial, an applicant must file his application in the court and county in which he was convicted. *See* Art. 11.07, § 2. Thus, in a general sense, an applicant files a writ application attacking the judgment of final conviction which has resulted in his confinement, regardless of the content of his actual claim.

Nevertheless, a claim regarding an affirmative finding does not affect the validity of the underlying conviction; nor does it alter the amount of punishment assessed. Rather, affirmative findings restrict a defendant's eligibility for parole. *See* Tex.Code Crim.Proc. Ann. art. 42.12, § 3(g)(a); *see also,* Tex. Gov't Code Ann. §§ 508.145(d) & 508.149(a) (Vernon Supp.1998). Thus, although the claim is cognizable under Article 11.07, § 1,[2] it is not a challenge to the conviction under Article 11.07, § 4, because it does not call into question the validity of the prosecution or the judgment of guilt.

### III. Conclusion

Both the definition of conviction and this Court's caselaw regarding writ applications lead to the conclusion that the procedural bar of § 4 is limited to instances in which the initial application raises claims regarding the validity of the prosecution or the judgment of guilt. It does not apply to claims regarding other matters, such as affirmative findings. I conclude that the plain language of § 4 is unambiguous and does not lead to an absurd result.

As a result, this application is not barred by § 4 because Applicant's prior application did not involve a claim which "challenges the conviction" within the meaning of Article 11.07, § 4. Thus, I would address the merits of Applicant's claims.

BAIRD, OVERSTREET and MEYERS, JJ., join.

---

**2.** Section 1 provides that Article 11.07 establishes the procedures "for an application for writ of habeas corpus in which the applicant seeks

relief from a felony judgment imposing a penalty other than death."