**Ex Parte Larue EVANS.**

No. 72876.

Court of Criminal Appeals of Texas, En Banc.

March 11, 1998.

Rehearing Denied April 22, 1998.

644

Larue Evans, Dalhart, pro se.

Ernest Davila, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

***OPINION***

PRICE, Judge.

Applicant filed this post-conviction application for a writ of habeas corpus in the trial court, which was then forwarded to this Court pursuant to Article 11.07 of the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 11.07 (Vernon Supp. 1997).[1] In 1989, Applicant was convicted of

---

**1.** Unless otherwise indicated, all references to articles are to those in the Texas Code of Criminal Procedure.

involuntary manslaughter and sentenced to ten years in prison. No appeal was taken from this conviction.

Here, Applicant contends that he has been denied credit on his sentence for time that he spent in jail prior to trial, as well as time that he spent in custody pursuant to parole pre-revocation "blue" warrants. Both claims are cognizable under Article 11.07. *See Ex parte Harris*, 946 S.W.2d 79 (Tex.Crim.App.1997); *Ex parte Canada*, 754 S.W.2d 660 (Tex.Crim. App.1988).[2]

Before we reach the merits of Applicant's claims, however, we must determine whether his claims are procedurally barred.

## I. Applicant's Claims

This is Applicant's second application under Article 11.07 pertaining to this cause. In his first application, filed in the trial court on October 24, 1996, Applicant raised various claims concerning a parole revocation hearing which occurred in 1996. Specifically, he argued that his hearing had been untimely, that he had been denied counsel and confrontation at his hearing, and that his hearing officer was biased against him. We denied relief without written order on the findings of the trial court without a hearing. *Ex parte Evans*, No. 33,043–01 (Tex.Crim.App. March 26, 1997).

On May 8, 1997, Applicant filed the instant application in the trial court. In it, he seeks credit for time he spent in jail in 1984, 1992, 1993, and 1995. The trial court initially, on June 18, 1997, recommended relief be denied because:

> Applicant has failed to include sufficient specific facts establishing that the current claims could not have been presented previously because the factual or legal basis for the claim was unavailable; or that, by a preponderance of the evidence, no rational juror could have found the applicant guilty beyond a reasonable doubt. TEX.CODE

CRIM. PROC. ANN. art. 11.07 § 4(a) (Vernon Supp.1997).

Subsequently, on July 21, 1997, the trial court signed Applicant's proposed "Findings of Facts and Conclusions of Law." In these findings, the trial court found that records from the Michigan Department of Corrections and the Harris County Sheriff's Department corroborate Applicant's claims. As a result, the trial court found that Applicant has been denied flat time and good time credits on his sentence and recommends that this Court grant relief. On August 29, 1997, the trial court rescinded its initial findings.

## II. Article 11.07's Section Four Procedural Bar

On August 1, 1997, Applicant filed a document entitled "Supplement to Habeas Corpus Providing Information to Meet Criterion of Article 11.07 Section 4(c) Subsection (a)(1)." In it, he argues that his prior writ application was not an attack on the conviction under the meaning of § 4.[3] He also claims that he is not attacking his trial in the instant application because he believes the presiding judge at his trial "scrupulously protected Applicant's State and constitutional rights during all phases of the criminal proceedings." Applicant states that the term "conviction" should be construed to mean "any and all proceedings pertaining to pretrial events through the sentencing phase." He argues that claims regarding parole revocation hearings, disciplinary hearings, et cetera, that would not result in a reversal of a conviction but only in a new hearing, cannot be construed as "attacks" on the original conviction. Finally, Applicant states that the trial court must distinguish between allegations that involve an attack on the conviction and allegations that "involve an attack on an entirely different matter which does not have anything to do with the conviction other than sharing the same forum for fact finding."

2. Our previous case law illustrates that when a defendant has been denied credit for jail time to which he is entitled, the preferred practice is for the trial court to enter a nunc pro tunc order authorizing credit for the appropriate time. *See, e.g., Ex Parte Kuban*, 763 S.W.2d 426, 426 n. 1 (Tex.Crim.App.1989); *Shaw v. State*, 539 S.W.2d

887, 890 (Tex.Crim.App.1976); *Valdez v. State*, 479 S.W.2d 927 (Tex.Crim.App.1972).

3. Applicant also claims the factual basis for one of his claims was unavailable to him at the time he filed his prior writ application.

## A. Defining "Challenge to a Conviction"

We filed and set this cause to determine whether the instant application is barred by Article 11.07, § 4. Specifically, we must determine whether, under § 4, Applicant's "initial application challeng[ed] the same conviction" as the instant application, since the initial application pertained only to Applicant's parole revocation hearing.[4]

Article 11.07, § 4, provides in pertinent part as follows:

> **Sec. 4.** (a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application *challenging the same conviction*, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

Art. 11.07, § 4 (emphasis added).

▮▮▮ The starting point in analyzing the meaning of a statute is the language of the statute itself. *Brown v. State*, 943 S.W.2d 35, 36 (Tex.Crim.App.1997). When a statute is clear and unambiguous, we apply the plain meaning of its words. *Ramos v. State*, 934 S.W.2d 358, 364 (Tex.Crim.App.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). When, however, the words are ambiguous, or

the plain meaning of the words would lead to an absurd result which the legislature could not possibly have intended, we look to extra-textual factors to ascertain the statute's meaning. *State v. Mancuso*, 919 S.W.2d 86, 88 (Tex.Crim.App.1996); *Boykin*, 818 S.W.2d at 785.

The phrases "challenge to a conviction" or "challenging a conviction" are not defined in Article 11.07 or in any other article in the Code of Criminal Procedure, nor are they defined in any other Texas statute. We therefore consider the definitions of the individual words. According to Black's Law Dictionary, the key words may be defined as follows:

> **Challenge.** To object or except to; to formally call into question ... the sufficiency or validity of an instrument; to call or put in question; to put into dispute; ...

> **Conviction.** In a general sense, the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged. The final consummation of the prosecution including the judgment or sentence, or as is frequently the case, the judgment or sentence itself. The stage of a criminal proceeding where the issue of guilt is determined.

BLACK'S LAW DICTIONARY (6th ed.1990).

Although the Code of Criminal procedure does not define "conviction," the Code significantly narrows the meaning given to "conviction" in the context of a criminal proceeding. Under Article 42.01, for instance, a "judgment" is defined, in part, as "the written declaration of the court signed by the trial judge and entered of record showing the *conviction* or acquittal of the defendant." Art. 42.01 § 1 (emphasis added). Throughout Article 42.01 the term "conviction" refers to the jury's decision of guilt—again, a limited view of the term. *Id.* at § 1(8), (9), (10), (13), (14) & (27).

---

4. It is true that Applicant's prior writ application pertained to this cause number, and the allegations raised in that application were addressed in full on their merits. *In Ex Parte Rawlinson*, 958 S.W.2d 198 at 199 (Tex.Crim.App.1997), we stated that, in such a case, the subsequent writ would be barred by § 4. However, that language

was unnecessary to our decision that a deadly weapon finding is part of a judgment and constitutes an attack on the conviction. We now disavow that language. It seems clear that, regardless of whether the prior claims were addressed on their merits, the issue is whether the prior claims constituted an attack on the conviction.

This is not, however, the Court's first attempt to define the term "conviction." While dissenting, former Judge Teague sagely noted that "considerable force can be put behind the proposition that [conviction] means different things in different statutes." *Ex parte Renier*, 734 S.W.2d 349, 365 (Tex.Crim.App. 1987) (Teague, J., dissenting) (discussing definition of "final conviction" under Article 11.07). He explained that "an argument can be made that the word means 'verdict of guilt' in some places and 'judgment on the verdict of guilt' in others." *Id.* (citations omitted). Agreeing with Judge Teague's observations, we too conclude that this Court has most often "construed the term 'conviction' to mean a judgment of guilt and the assessment of punishment." *Id.* (citations omitted).

## B. Parole Revocations

Based on these definitions, a challenge to a conviction would appear to be limited to claims regarding "the final consummation of the prosecution," "the judgment or sentence that the accused is guilty as charged," or "a judgment of guilty and the assessment of punishment." This interpretation would exclude matters such as parole revocations from the ambit of § 4, because a parole revocation issue does not call into question the validity of the prosecution or judgment; rather, it questions issues arising after the completion of the prosecution.

■ It is true that claims regarding parole revocation hearings are cognizable under Article 11.07. *Board of Pardons and Paroles ex rel Keene v. Court of Appeals for the Eighth District*, 910 S.W.2d 481, 483 (Tex. Crim.App.1995). In order to raise these claims, like claims pertaining to trial, an applicant must file his application in the court and county in which he was convicted. *Ex parte Woodward*, 619 S.W.2d 179 (Tex.Crim. App.1981); *Ex parte Alexander*, 861 S.W.2d 921, 922 (Tex.Crim.App.1993). Thus, in a general sense, an applicant files a writ application attacking the judgment of conviction which has resulted in his confinement, re-

gardless of the content of his actual claim. *Woodward*, 619 S.W.2d at 179.

■ Nevertheless, we recognized in *Woodward* that a claim regarding a parole revocation "is not addressed to the validity of the underlying conviction." *Id.* Thus, although the claim is cognizable under Article 11.07, § 1,[5] it is not a challenge to the conviction under Article 11.07, § 4, because it does not call into question the validity of the prosecution or the judgment of guilt.

Both the definition of conviction and this Court's case law regarding writ applications lead us to the conclusion that the procedural bar of § 4 is limited to instances in which the initial application raises claims regarding the validity of the prosecution or the judgment of guilt. It does not apply to claims regarding other matters, such as parole revocations. We conclude that the plain language of § 4 is unambiguous and does not lead to an absurd result.

As a result, this application is not barred by § 4 because Applicant's prior application did not involve a claim which "challenges the conviction" within the meaning of Article 11.07, § 4.

## III. The Merits

Having concluded that this application is not procedurally barred, we now address the merits of Applicant's claims. Applicant first claims that he has been denied credit on his sentence for time that he served in custody prior to trial, from June 5, 1984, to September 10, 1984. In the trial court's revised findings, the court finds that Applicant was arrested on June 5, 1984, and the charges were dismissed on September 14, 1984. The court finds that Applicant was in the custody of the Harris County Jail for 97 days.

In his second claim, Applicant contends that he has been denied credit on his sentence for time he spent in custody in Michigan with a Texas blue warrant lodged against him. He seeks credit for the time periods from February 20, 1992, to April 6, 1993, and from July 17, 1995, to sometime in

---

5. Section 1 provides that Article 11.07 establishes the procedures "for an application for writ of habeas corpus in which the applicant seeks

relief from a felony judgment imposing a penalty other than death."

December, 1995. The trial court's revised findings do not include any specific findings regarding the dates that Applicant was in custody on any blue warrants. The trial court nevertheless recommends that "relief be granted in all respects."

■ While this Court is not bound by the findings of a habeas judge in a habeas corpus proceeding, where the findings are supported by the record, they should be accepted by this Court. *Ex parte Jarrett*, 891 S.W.2d 935, 940 (Tex.Crim.App.1994); *Ex parte Turner*, 545 S.W.2d 470, 473 (Tex.Crim.App. 1977). In the instant case, there is nothing in the record to support any of the trial court's findings. Although the findings indicate that documents from the Michigan Department of Corrections and the Harris County Sheriff's Department corroborate Applicant's allegations, our record does not include any such documents. The record is devoid of any evidence of what dates Applicant was in custody prior to trial, what dates he was in custody pursuant to any blue warrants, and whether he is receiving credit on his sentence for any such dates. The only item in the record regarding these claims are Applicant's sworn allegations. Even sworn allegations are not alone sufficient proof. *Ex parte Empey*, 757 S.W.2d 771, 775 (Tex.Crim. App.1988).

■ Therefore, it is this Court's opinion that additional facts need to be developed and, since this Court cannot hear evidence, the trial court is the appropriate forum. The trial court may resolve the instant issues as set out in Article 11.07, § 3(d), in that it may order affidavits from the Michigan Department of Corrections, the Harris County Sheriff's Department, and the Texas Department of Criminal Justice. In the alternative, the trial court may order depositions, interrogatories, or a hearing.

If the trial court elects to hold a hearing, that court should first decide whether Applicant is indigent. If the trial court finds that Applicant is indigent, and the Applicant desires to be represented by counsel, the trial court will then, pursuant to the provisions of Article 26.04, appoint an attorney to represent him at the hearing.

Following receipt of additional information, the trial court should make findings of fact as to: (a) what dates Applicant was in custody pursuant to this case prior to trial; (b) what dates Applicant was in custody pursuant to blue warrants for this case; and (c) whether Applicant has received credit on his sentence for any such incarceration. The trial court should also make any further findings of fact and conclusions of law which it deems relevant and appropriate to the disposition of Applicant's application for habeas corpus relief.

Since this Court does not hear evidence, *Ex Parte Rodriguez*, 169 Tex.Crim. 367, 334 S.W.2d 294 (1960), this application for a postconviction writ of habeas corpus will be held in abeyance pending the trial court's compliance with this opinion. Resolution of the issues shall be accomplished by the trial court within 90 days of the date of this opinion.[6] A supplemental transcript containing all affidavits and interrogatories or the transcription of the court reporter's notes from any hearing or deposition along with the trial court's supplemental findings of fact and conclusions of law shall be returned to this Court within 120 days of the date of this opinion.[7] Accordingly, this case is abated until we receive additional documentation from the trial court.

KELLER, Judge, dissenting.

The majority in this case concludes that article 11.07, section four of the Code of Criminal Procedure does not bar applicant's subsequent application for writ of habeas corpus because his previous application was not an attack on his "conviction." Because I disagree with the majority's limitation on the so-called "subsequent writ" bar, I respectfully dissent.

Applicant was convicted in 1989 of involuntary manslaughter and sentenced to ten years in prison. He took no appeal from that

---

6. In the event any continuances are granted, copies of the order granting the continuance should be provided to this Court.

7. Any extensions of this time period should be obtained from this Court.

conviction. He now files this application for writ of habeas corpus pursuant to article 11.07 of the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 11.07 (Vernon Supp.1997).

Applicant claims in this application that he has not received credit for jail time served prior to trial or pursuant to a parole revocation "blue warrant." Both claims are, generally, cognizable under article 11.07. *See Ex parte Harris,* 946 S.W.2d 79 (Tex.Crim.App. 1997); *Ex parte Canada,* 754 S.W.2d 660 (Tex.Crim.App.1988). However, before we reach the merits of applicant's claims, we must ascertain whether they are procedurally barred because applicant raises them in a subsequent writ. *See* TEX.CODE CRIM. PROC. ANN. 11.07, Sec. 4 (Vernon Supp.1997).

Applicant has previously filed an 11.07 application in this cause. The first application, filed with the trial court on October 24, 1996, raised claims concerning a 1996 parole revocation hearing. Specifically, he argued that the hearing was untimely, that he was denied counsel and confrontation at the hearing, and that the hearing officer was biased against him. We considered his claims on the merits, but denied relief. *Ex Parte Evans,* No. 33,043–01 (Tex.Crim.App. March 26, 1997)(not designated for publication).

Applicant filed the current application in the trial court on May 8, 1997. The trial court initially recommended we deny applicant relief because

> [a]pplicant has failed to include sufficient facts establishing that the current claims could not have been presented previously because the factual or legal basis for the claim was unavailable; or that, by a preponderance of the evidence, no rational juror could have found the applicant guilty beyond a reasonable doubt. TEX.CODE CRIM. PROC. ANN. art. 11.07 § 4(a) (Vernon Supp.1997).

However, the trial court later rescinded this recommendation and recommended relief based on its findings that records from the Michigan Department of Corrections and the Harris County Sheriff's Department corroborated applicant's claims.

## I. The Subsequent Writ Bar

Article 11.07, section four, sets forth the procedural bar to subsequent post-conviction applications for writ of habeas corpus:

> (a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

> (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

TEX.CODE CRIM. PROC. ANN. art. 11.07, sec. 4(a) (Vernon Supp.1997).

### A. Applicant's claims in answer to the bar

Applicant claims, first, that the factual basis for one of his claims was unavailable to him at the time of his initial application, triggering the exception to the subsequent writ bar laid out in section 4(a)(1). More important, he claims the prior application did not attack his "conviction" for the purposes of the bar, so his current application is not a "subsequent" one. He argues that the term "conviction" in this context should mean "any and all proceedings pertaining to pretrial events through the sentencing phase." He also contends that because a favorable disposition of his application would result only in a new hearing and not a reversal of his conviction, his application does not attack the conviction. Finally, he argues for a distinction between an attack on a conviction and an attack on a matter "which does not have anything to do with the conviction other than sharing the same forum for fact finding." I will first address the question whether appli-

cant's first application—an attack on a parole revocation—challenged his "conviction" for the purposes of article 11.07, section 4.

## II. Defining "Conviction"

In large part, whether we may address applicant's claims turns on our interpretation of the word "conviction" as used in article 11.07, section 4. When we face the critical interpretation of a single statutory term, as we do in this case, we follow a rigid analytical process for that interpretation. First, we consider the word in isolation. If the word carries inherent meaning which does not vary. depending on usage, and this meaning can be applied to the usage in question without contradiction or logical inconsistency, we apply that meaning. *Brown v. State*, 943 S.W.2d 35, 36 (Tex.Crim.App.1997). If, however, the word's meaning varies depending on its usage, we move on to a more contextual analysis, focusing on the plain wording of the statute as a whole. If the word, viewed in its context within the statutory language, yields an obvious and logical meaning which does not lead to an absurd result, we end our examination there. *Ramos v. State*, 934 S.W.2d 358, 364 (Tex.Crim.App.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). Finally, if the plain meaning of the statute leaves the word's meaning ambiguous, or leads to an absurd result, we may then—and only then—delve further into the word's context by examining extratextual factors, such as legislative history, to divine the intent of the statute's drafters. *State v. Mancuso*, 919 S.W.2d 86, 88 (Tex.Crim.App.1996); *Boykin*, 818 S.W.2d at 785.

The statute before us does not define the term "conviction." However, the Code of Criminal Procedure requires elsewhere that "all words, phrases, and terms used in this Code are to be taken and understood in their usual acceptation . in common language, except where specially defined." TEX.CODE

CRIM PROC. ANN. art. 3.01 (Vernon Supp. 1997). According to Black's Law Dictionary, a. conviction is

> the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged. The final consummation of the prosecution including the judgment or sentence, or as is frequently the case, the judgment or sentence itself. The stage of a criminal proceeding where the issue of guilt is determined.

BLACK'S LAW DICTIONARY 333–34(6th ed.1990). This definition leaves some confusion—does the word mean the finding of guilt, or the imposition of sentence, or both? Furthermore, while Black's Law Dictionary is an invaluable tool in deciphering obscure legal terms, its definitions may not represent a word's "usual acceptation in common language." Indeed, a nonlegal dictionary presents a much narrower and less specific definition of the term: "the act or process of convicting of a crime esp. in a court of law." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 254 (10th ed.1993). The verb "convict" is defined as "to find or prove to be guilty." *Id.* The ordinary definitions of "conviction" do not present a meaning without ambiguity. Nor has our caselaw uniformly defined this word. Judge Teague once pointed out in a dissent that the term "[is] widely used throughout the penal and procedural laws of this State, but [is] nowhere defined, even though [it has] been held to mean different things in various contexts," and he concluded that "considerable force can be put behind the proposition that it means different things in different statutes." *Ex parte Renier*, 734 S.W.2d 349, 364–65 (Tex.Crim.App.1987) (Teague, J., dissenting).[1]

It seems apparent, then, that the scope of this term varies depending on the context of its use. As discussed above, when a statutory term's meaning depends so critically on context, we look first at its most immediate context—the plain wording of the statute as

---

1. He continued:

Specifically, an argument can be made that the word means "verdict of guilt" in some places and "judgment on the verdict of guilt" in others. *See McCarter v. State*, 527 S.W.2d 296 (Tex.Crim.App.1975); *Whan v. State*, 485

S.W.2d 275 (Tex.Crim.App.1972); *Ex parte Hayden*, 152 Tex.Crim. 517, 215 S.W.2d 620 (1948); *Goss v. State*, 107 Tex.Crim. 659, 298 S.W. 585 (1927).

*Renier*, 734 S.W.2d at 365.

a whole—to divine the intended import of the term. This term falls within an article of the Code of Criminal Procedure entitled "Procedure after Conviction Without Death Penalty." TEX.CODE CRIM. PROC. art. 11.07 (Vernon Supp.1997). This article expresses its purpose as "establish[ing] the procedures for an application for writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death." *Id.* § 1. Within the context of this article, section four forbids consideration of an application if it "is filed after final disposition of an initial application challenging the same conviction." *Id.* § 4. Section one of this article explains the purview of the article as a whole, while section four places a limitation on the article as a whole. That which is described by section one is limited by section four. In interpreting section one, this court has characterized an 11.07 habeas application as "challenging the legality of confinement under the authority of a conviction." *Ex parte Alexander,* 861 S.W.2d 921, 923 (Tex. Crim.App.1993). Even more specifically, we have held that an applicant can raise a challenge to his parole revocation in an 11.07 application, concluding that

> [a]lthough his challenge is not addressed to the validity of the underlying conviction, it is nevertheless the case that his confinement is under authority of that conviction.

*Ex parte Woodward,* 619 S.W.2d 179, 179 (Tex.Crim.App.1981). It is inconsistent for this court to recognize a claim under section one, yet hold that it is unaffected by section four. Indeed, such an interpretation would lead to an "absurd result." *Boykin,* 818 S.W.2d at 785.

Furthermore, this court has acknowledged that the meaning of section four might be ambiguous or lead to an absurd result, and we have examined this article's legislative history. We have noted that the legislature's expressed intent for the enactment of section four was to limit 11.07 applicants to "one bite at the apple." *Ex parte Torres,* 943 S.W.2d 469, 473 (Tex.Crim.App.1997) (quoting the

bill's sponsor as saying: "[W]e tell individuals that, everything you can possibly raise the first time, we expect you to raise it initially, one bite at the apple, one shot ... "). The legislature clearly envisioned a broad prohibition on multiple applications for writ of habeas corpus. In discussing that broad prohibition, we have further concluded that "a final disposition of an attack on a 'conviction' for purposes of § 4 is an attack on a specific cause number in which all issues which were raised have been dealt with on the merits." *Ex Parte Rawlinson,* 958 S.W.2d 198, 200 (Tex.Crim.App.1997). Therefore, I believe that applicant's first application, attacking his parole revocation in the same cause number as his current application, acts to bar this writ under section four of article 11.07.

## III. Other Exceptions to the Subsequent Writ Bar

Appellant also claims he meets the first exception to the section four bar, that is, his current claims and issues could not have been presented previously, because the factual or legal basis for the claims were unavailable on the date he filed the previous application. Applicant alleges facts which show that his parole was revoked on September 27, 1996. Subsequent to the filing of the initial application, on or about December 14, 1996, applicant received his time sheet from the Texas Department of Criminal Justice—Institutional Division which reflected that Applicant was not receiving time credit for the period he spent incarcerated pursuant to the "blue" warrants filed in the instant case.[2] The facts alleged by applicant do establish that this claim could not have been raised in his initial application, as the factual basis for the claims was not then available to him. If his allegation as to the date of his notice of time credit from TDCJ–IC has factual support, applicant is entitled to additional time credits for any periods he spent in custody

2. Applicant contends that he has been denied credit on his sentence for time he spent in custody in Michigan with a Texas "blue" warrant lodged against him. Specifically, applicant contends that he is entitled to a time credit for the period from February 20, 1992 until April 6, 1993, and from July 17, 1995 until an unspecified date in December, 1995. The trial court recommended that "relief be granted in all respects."

pursuant to the "blue" warrants in the instant case.

However, the record before us does not support the trial court's recommendation that appellant be credited specific amounts of time, as the records referred to in those findings do not appear before us. Furthermore, this record fails to resolve whether or not applicant had notice of his denial of time credits prior to his initial application in this case. Therefore, I believe this court should order the trial court to further develop the record in this case in order to resolve these factual issues. The trial court could do so as set out in article 11.07, section 3, by ordering affidavits, depositions, interrogatories, or a hearing.

As for the time credits applicant claims he is entitled to for time spent incarcerated prior to trial, applicant does not establish his entitlement to any exception to section four's subsequent writ bar. Therefore, pursuant to that section, we may not consider the merits of those claims. We should dismiss his application in regard to those claims only.[3]

## IV. Conclusion

I therefore believe this court should order the trial court to develop a sufficient record to resolve appellant's claim under his application for writ of habeas corpus that he has been denied time credit for time spent incarcerated pursuant to a Texas "blue" warrant in this case. On remand, the trial court should determine (1) if applicant indeed did not have notice of the denial of his time credits prior to his previous application for an 11.07 writ of habeas corpus, and (2) if not, the specific amount of time credit to which he is entitled. His other claim—that he has been denied time credit for pretrial confinement—should be dismissed pursuant to the

"subsequent writ" bar contained in article 11.07, section 4 of the Texas Code of Criminal Procedure.

---

**3.** Our dismissal of these claims does not necessarily foreclose relief for this applicant. If he did not receive credit to which he was entitled for time served pretrial, he may still petition the trial court for an Order Nunc Pro Tunc correcting his sentence. His entitlement to time credit for pretrial confinement, while not constitutionally mandated, *see Caraway v. State*, 550 S.W.2d 699 (Tex.Cr.App.1977), has been made mandatory by the Legislature. *See* Tex.Code Crim. Proc. art. 42.03, § 2(a) (Vernon Supp.1997) ("the court ... *shall* give the defendant credit on his sentence

... from the time of his arrest and confinement until his sentence by the trial court")(emphasis added); *Ex parte Green*, 688 S.W.2d 555, 557 (Tex.Crim.App.1985). And as we have repeatedly held, "where a defendant has been denied credit for jail time to which he is entitled, the trial court may enter appropriate nunc pro tunc orders authorizing credit for the appropriate time." *Ex parte Kuban*, 763 S.W.2d 426, 427 n. 1 (Tex.Crim.App.1989) (quoting *Shaw v. State*, 539 S.W.2d 887, 890 (Tex.Crim.App.1976)).