

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-48,152-08

**EX PARTE GARCIA GLEN WHITE, Applicant**

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NO. 0723847 IN THE 180TH JUDICIAL DISTRICT COURT
## FROM HARRIS COUNTY

ALCALA, J., filed a dissenting opinion in which MEYERS and JOHNSON, JJ., joined.

## DISSENTING OPINION

In his habeas application challenging his death sentence, Garcia Glen White, applicant, contends that the new-science statute, Article 11.073 of the Code of Criminal Procedure, applies to the evidence admitted in the sentencing phase of his death-penalty trial. *See* TEX. CODE CRIM. PROC. art. 11.073. More specifically, applicant alleges that he is "entitled to a new trial because newly discovered scientific evidence would have provided compelling mitigating evidence that would have likely changed the jury's answers to the special issues." This Court dismisses applicant's habeas application on the basis that the

new-science statute is inapplicable to the sentencing phase of his death-penalty trial. I, however, conclude that the word "convicted" as it is used in Article 11.073 is ambiguous and that extra-textual statutory analysis favors interpreting the word to include the sentencing phase of a death-penalty trial. I conclude that applicant may assert a complaint under Article 11.073 about the scientific evidence introduced in the punishment phase of his trial at which he was sentenced to death. I would remand this case for an evidentiary hearing and factual findings by the habeas court. I, therefore, respectfully dissent from this Court's dismissal of this habeas application.

## I. Analysis

Article 11.073 permits a convicted person to obtain relief based on new scientific evidence showing that the person would not have been convicted if the newly available evidence had been presented at trial. *Id.*; *see also Ex parte Robbins*, 478 S.W.3d 678, 690 (Tex. Crim. App. 2014). The statute applies to an offense for which a defendant was "convicted," which is a word that could be interpreted narrowly by limiting the statute's applicability to the guilt phase of trial, or it could be interpreted more broadly to include its application to the punishment phase of a death-penalty trial. As I explain below, because the statutory language is ambiguous, it is necessary to consider extra-textual factors, and those factors suggest a legislative intent to apply a broader definition for the word "convicted." By more broadly construing the word "convicted" as it is used in Article 11.073 to include a death sentence, an applicant would be permitted to specifically challenge discredited

scientific evidence that was used in the punishment phase of a death-penalty trial.

### A. Statutory Language Is Ambiguous

The statute states,

PROCEDURE RELATED TO CERTAIN SCIENTIFIC EVIDENCE.
(a) This article applies to relevant scientific evidence that:
  (1) was not available to be offered by a convicted person at the convicted person's trial; or
  (2) contradicts scientific evidence relied on by the state at trial.
(b) A court may grant a convicted person relief on an application for a writ of habeas corpus if:
  (1) the convicted person files an application . . . containing specific facts indicating that:
    (A) relevant scientific evidence is currently available and was not available at the time of the convicted person's trial because the evidence was not ascertainable through the exercise of reasonable diligence by the convicted person before the date of or during the convicted person's trial; and
    (B) the scientific evidence would be admissible under the Texas Rules of Evidence at trial held on the date of the application; and
  (2) the court makes the findings described by Subdivisions (1) (A) and (B) and also finds that, had the scientific evidence been presented at trial, on the preponderance of the evidence the person would not have been convicted.

TEX CODE CRIM. PROC. art. 11.073.

To determine whether applicant may obtain relief on the basis of new scientific evidence under Article 11.073 based on a complaint relating to the punishment phase of his death-penalty trial, it is necessary to determine whether the word "convicted" limits the statute's application to evidence relevant to the guilt phase of trial only. *See id.* art. 11.073(b)(2). Thus, the availability of the habeas relief applicant seeks under Article 11.073

depends on the meaning of the phrase "would not have been convicted." *See id.*

This Court uses rules of statutory interpretation to discern the Legislature's intent. Statutory interpretation seeks to "effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Discerning this collective legislative intent or purpose requires focusing on the literal text of the statute in question to "discern the fair, objective meaning of that text at the time of its enactment." *Id.* If the plain language of a statute would lead to absurd results or is ambiguous, a court may consider certain extra-textual factors to ascertain the Legislature's intent. *Id.*; *see also* TEX. CODE CRIM. PROC. art. 3.01.

With respect to the statutory language at issue in this case, I note that the word "convicted" is defined neither in Article 11.073 nor elsewhere in the Code of Criminal Procedure. In the absence of a specific definition for the word, it is necessary to examine whether its meaning can be discerned from the context in which it is used in the particular statute.

If a word's meaning can vary depending on its usage, a contextual analysis that focuses on the plain wording of the statute as a whole is used. *See Ramos v. State*, 934 S.W.2d 358, 364 (Tex. Crim. App. 1996); *United Sav. Assn of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a

context that makes the meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.") (internal citations omitted).

Here, an examination of this Court's precedent reveals that the word "convicted" can vary depending on its usage, but this Court has more often than not assigned a meaning to the word that includes the punishment phase of trial. In particular, this Court's precedent has determined that the word "conviction" can be ambiguous and mean different things in different statutes. *See Ex parte Evans*, 964 S.W.2d 643, 647 (Tex. Crim. App. 1998). Most often, however, this Court has opted for the broader view of the meaning of the word in that we have "construed the term 'conviction' to mean the judgment of guilt and the assessment of punishment." *Id.*

Because the word "convicted" can vary depending on its usage, it is necessary to examine how it is used in the particular statute to determine whether that sheds light on its plain meaning. Here, the statute, when examined as a whole, does not specify whether the Legislature intended to limit the statute's applicability to only the guilt phase or to include the sentencing phase of a death-penalty trial, but it appears more likely that the Legislature intended the word to have the broader meaning. The Legislature enacted Article 11.073 to address the problem of bad science that was used in criminal cases that affected their outcome. *See* Bill Analysis, Tex. S.B. 344, 83d Leg., R.S. (July 3, 2013). In light of that problem, the Legislature would likely have intended for a broader application of the statute

to include the sentencing phase of a death-penalty trial. This view that the Legislature intended a broader application of the statute is supported by Article 11.04, which mandates construing the statutory language in Article 11.073 in a manner that would most favorably provide for habeas relief. *See* TEX. CODE CRIM. PROC. art. 11.04, 11.073. Attributing "convicted" a meaning of either a judgment of guilt or an assessment of punishment in a death-penalty case accords with this mandate, and thus supports the broader view of the word "convicted."

I disagree that it is appropriate to treat the word "convicted" as being limited to the guilt phase of trial merely because the DNA statute has been interpreted by this Court as being limited in that way. The DNA statute is not a statute that itself provides habeas relief to an applicant. An applicant may use DNA evidence as part of his habeas application, but the DNA statute is itself not a habeas statute. Moreover, Article 11.04's requirement that "[e]very provision relating to the writ of habeas corpus shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it" is inapplicable to the DNA statute. TEX. CODE CRIM. PROC. art. 11.04. But it is applicable to Article 11.073. Thus, the Legislature has specifically required this Court to interpret the meaning of the language in Article 11.073 in a light that would be most likely to effect the remedy and protect the rights of the person seeking relief. *See id*. Given that this Court has used "convicted" to include the punishment phase of a trial in other contexts besides the DNA statute, and given that Article 11.04 requires us to examine the statutory

language in a light that favors the availability of relief for an applicant, the statutory language appears to favor the broader use of the term.[1]

This Court's majority opinion sets forth a plausible explanation for why the word "convicted" may be reasonably limited to the guilt phase of trial, and, as I have explained above, that word may also be reasonably read as applying to the punishment phase of a death-penalty case. Because the word "convicted" may be reasonably understood in common language to include only the guilt phase or to also include the sentencing phase of trial, and because the words when examined in context of the statute as a whole would appear to support the broader view of the term in light of Article 11.04's requirement for construing habeas statutes most favorably for granting relief, I conclude that the statute is ambiguous.

**B. Extra-Textual Analysis Reveals Legislative Intent to Use Broader Meaning**

Having determined that it is necessary to look beyond the plain language in Article 11.073, I consider extra-textual factors to discern the Legislature's intent. These factors include, among other matters, (1) the object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular

---

[1] This Court's majority opinion holds that, because of the way in which this Court has interpreted the word "convicted" in the context of the DNA statute, that word has the same meaning in this statute, and thus the statutory-analysis question before us in the instant case may be resolved based on the statute's plain language. I have discussed the DNA statute in the course of analyzing the statutory language in Article 11.073, but arguably that comparison is more appropriate as an extra-textual consideration that takes into account how other statutes treat the same word. Although I have included a discussion of the DNA statute in my assessment of the statutory language, that discussion more likely belongs as an extra-textual consideration.

construction; (6) administrative construction of the statute; and (7) title (caption), preamble, and emergency provision. TEX. GOV'T CODE § 311.023; *Jordan v. State*, 36 S.W.3d 871, 873 (Tex. Crim. App. 2001).

In considering the object sought to be attained, the circumstances under which the statute was enacted, and the consequences of a particular construction, as explained above, the article was enacted to address the problem of bad science, which applies with equal force in guilt or punishment. In considering the administrative construction of the statute, I note that in other places, the Code recognizes "conviction" to refer to both the determination of guilt and the assessment of punishment. The use of the broader view of the term in other places in the Code also supports a conclusion that the Legislature would have anticipated this same construction and thus would have intended to include the punishment phase of a death-penalty trial within the statute's scope.

With particular respect to the punishment phase in death-penalty cases, I observe that, because the State must prove some of the special issues beyond a reasonable doubt, the jury's affirmative answer to those special issues is, functionally speaking, a determination that the defendant should be "convicted" of the death penalty. *See* TEX. CODE CRIM. PROC. art. 37.071, § 2(a)(1) (in death-penalty cases, after the finding of guilt, the court "shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment without parole"), (b) (describing future-dangerousness and party-liability special issues that must be submitted to jury), (c) (State must prove special issues in

Subsection (b) beyond a reasonable doubt; jury must return a "special verdict" on those special issues). The requirement that the State prove some of the special issues beyond a reasonable doubt distinguishes death-penalty sentencing determinations from other types of punishment determinations, which do not require that the State satisfy such a heightened burden of proof. In this sense, because the burden of proof at the punishment phase of a death-penalty case is the same as in the guilt phase, the resulting verdict that a defendant should be sentenced to death is in reality a determination that he is guilty of, and should be convicted of, the death penalty. I note that this Court and other courts have suggested as much by indicating that, in some cases, a defendant might present evidence showing that he is actually innocent of the death penalty. *See Ex parte Blue,* 230 S.W.3d 151, 167 (Tex. Crim. App. 2007); *see also Sawyer v. Whitley*, 505 U.S. 333, 349 (1992). Given the functional and procedural similarities between a determination of guilt and a determination that a defendant should be sentenced to death, it makes little practical sense to treat a death sentence as an ordinary punishment rather than as a "conviction" of that penalty.

The legislative history is informative of the Legislature's intent. Article 11.073 was enacted in the wake of a series of opinions that cast doubt on the role and weight of scientific evidence in criminal trials. The legislative history of Article 11.073 "indicates that the intent of this statute is to provide relief to those who were convicted on science or scientific methodology that is now known to be unsound." *Robbins*, 478 S.W.3d at 692 (Johnson, J., concurring). In short, the Texas Legislature chose to enact Article 11.073 to ensure accuracy

in the criminal-justice system rather than endorse finality. *See id.* at 704 (Cochran, J., concurring). In this view, the phrase "would not have been convicted" within the meaning of Article 11.073 envisions determinations of both guilt and punishment because the concerns surrounding accuracy that the Legislature sought to codify would apply to both wrongful verdicts and wrongful punishments in capital murder cases in which the death penalty is imposed.

I also note that if Article 11.073 is deemed to apply only to guilt determinations, applicants who cannot make out a cognizable constitutional claim will have no avenue of collateral attack on flawed scientific evidence used only in the punishment phase and no forum to introduce newly discovered scientific evidence that militates against death but does not bear on guilt.[2] That narrower view of the new-science statute would appear to be

---

[2] I acknowledge that, even without utilizing the statutory basis in Article 11.073, a defendant who can establish a due-process violation on the basis that false scientific evidence was presented at the punishment phase of his capital-murder trial would be entitled to relief on that basis. *See* TEX. CODE CRIM. PROC. art. 11.071; *Estrada v. State,* 313 S.W.3d 274, 288 (Tex. Crim. App. 2010). But not all new-science claims will give rise to a constitutional violation. In some cases, for example, there may have been no scientific evidence presented in the punishment phase at all; in those situations, under the majority opinion's construction of Article 11.073, even if a litigant were to present new scientific evidence that would persuasively show that the jury's conclusion on punishment was in error, he likely would not be entitled to relief because he could not show any constitutional violation stemming from the introduction of materially false evidence at the punishment phase. In short, some, but not all, new-science claims will also give rise to a constitutional violation that may be litigated through the traditional vehicle of Article 11.071. For those claims that do not rise to the level of establishing a constitutional violation, the majority's construction of Article 11.073 will preclude relief, even in situations in which the new scientific evidence clearly calls the correctness of the jury's punishment determination into question. A suggestion that Article 11.073 does not apply to the punishment phase of a death-penalty trial because there is another habeas statute that could possibly provide relief for constitutional or jurisdictional violations entirely misses the point that the Legislature enacted Article 11.073 to more broadly provide relief on the basis of new scientific evidence.

inconsistent with the Legislature's intent to keep flawed scientific evidence from infecting criminal cases. It is similarly inconsistent with its intent to ensure certainty in criminal convictions by providing relief based on exonerating evidence that was not available at the time of trial. *See* TEX. CODE CRIM. PROC. art. 11.073(a)(1).

Furthermore, interpreting conviction or "convicted" to encompass both the guilt and punishment phases of a capital-murder trial comports with the Supreme Court's death-penalty jurisprudence. The Supreme Court has held that certain defendants are categorically ineligible for death sentences due to age, intellectual disability, or deficient criminal culpability. *See Roper v. Simmons*, 543 U.S. 551, 575 (2005); *Atkins v. Virginia*, 536 U.S. 304, 321 (2002); *Tison v. Arizona*, 481 U.S. 137, 158 (1987). To the extent that such individuals, though actually guilty of the capital offense, are, in fact, ineligible for death sentences based on new science, interpreting "conviction" to include the punishment phase adheres to the Supreme Court's restrictions placed on capital punishment. For example, a death sentence may be erroneously imposed after a jury concludes beyond a reasonable doubt that the Article 37.071 special issues are met based on flawed science. *See* TEX. CODE CRIM. PROC. art. 37.01, § 2(b), (c). If later-discovered scientific evidence weighs against those conclusions by showing that the defendant was intellectually disabled, posed no future threat to society, or that mitigating circumstances were present, habeas relief could be granted to an applicant if Article 11.073 were to apply to the punishment phase of a death-penalty trial. Based on this view shared by the Supreme Court and this Court that a capital-offense

conviction includes the penalty phase of a death-penalty trial, it reasonably suggests that the Legislature would have known that the use of that word likewise would include the penalty phase of a death-penalty trial.

In applying the new-science statute to a "conviction," the Legislature likely intended it to apply to the penalty phase of a capital-murder trial because the Supreme Court and this Court have discussed the death penalty as part of a defendant's conviction for capital murder. The Legislature's apparent intent to curb the use of flawed science and achieve greater accuracy in criminal cases is best achieved by a broader view of the word "conviction" that encompasses both the guilt phase and punishment phase of a death-penalty trial.

## II. Conclusion

The plain language in the new-science statute in Article 11.073 is ambiguous because the word "conviction" has been used to include both the determination of guilt and death sentence in a death-penalty trial. Consideration of all the relevant extra-textual factors shows that the Legislature intended for Article 11.073 to apply to both the guilt and penalty phases of a death-penalty trial. For the foregoing reasons, I respectfully dissent.

Filed: November 2, 2016

Publish