IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. AP-75,281






Ex parte RAUL RODRIGUEZ, Applicant





ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM HARRIS COUNTY





 JOHNSON, J., delivered the opinion of a unanimous Court.



O P I N I O N



 On October 26, 2005, we ordered this application for writ of habeas corpus filed and set "to
determine whether Applicant is entitled to jail time credit for a period he spent incarcerated in a
foreign country, in this case Mexico, while awaiting extradition to this State." Pursuant to our order,
both parties filed briefs. After we reviewed the record, we abated the cause and directed the trial
court to make findings of fact in regard to applicant's claim that he was held by Mexican officials
solely because of the fugitive warrant presented to Mexican authorities by the United States
Department of Justice. The trial court has now made those findings.

 Applicant argues that he "is entitled to jail time credit for the period of incarceration in
Mexico pending extradition for the service of his sentence in the Texas Department of Criminal
Justice -Institutional Division [TDCJ-CID]." The state asserts that, because a detainer or hold was
never lodged against applicant while he was incarcerated in the custody of United States or Mexican
authorities, he fails to show that he is entitled to credit for the 449 days that he was allegedly in the
custody of Mexican officials awaiting extradition.

 The writ record reflects that, in May of 1987, applicant plead guilty to the offense of murder
and was sentenced to twenty years in prison. The parties agree on a number of allegations.

Applicant was released to mandatory supervision on October 1, 1993. 

Applicant was rearrested in June of 1995.

 The Texas Board of Pardons and Paroles revoked his mandatory supervision on July
21, 1995, and he was returned to the Texas Department of Criminal Justice
(TDCJ) on October 31, 1995.

 Applicant was released from the custody of TDCJ on November 10, 1995, and
transferred to the custody of the United States Marshal Service pursuant to
a federal bench warrant. 

 Applicant was found not guilty of the federal criminal charges on December 8, 1995,
and was released (1) from custody by federal authorities. 

Applicant thereafter returned to his family's home in Mexico. 

 The trial court's original fact findings state that, after applicant was acquitted of the federal
charges and released from federal custody, TDCJ "stopped granting Applicant time credits towards
his sentence beginning December 8, 1995, since Applicant was no longer in federal custody." The
trial court's original findings also state that applicant was returned to the custody of TDCJ on June
3, 2002. The trial court refers to several affidavits from TDCJ personnel in support of its findings
of fact.

 One of those affidavits indicates that applicant's accrual of time stopped on December 8,
1995, when he was "released in error by the U.S. Marshal's Service and [was] in Mexico" and "will
be charged out of custody." That affidavit also indicates that applicant was returned to custody on
June 5, 2002, and due to the U.S. Marshal's Service "erroneous" release, applicant "was charged as
out of custody for a period of 6-years 5-months 25-days [sic] for an unsatisfactory term." One of the
other affidavits likewise indicates that applicant was released in error by the U.S. Marshal's Office
and "will be charged out of custody time once returned;" although that affidavit indicates that
applicant was rearrested on June 3, 2002. Another affidavit states that on December 8, 1995,
applicant "was released from custody and fled to Mexico," and that on October 20, 1997, TDCJ
republished a warrant which had been previously issued on July 21, 1995; applicant "was arrested
on or about June 5, 2002[,] on this warrant," upon his return to Texas.

 Applicant asserts that, after his acquittal on federal charges and release by the U.S. Marshal's
Service and his return to his parent's home in Mexico, the United States Department of Justice
sought an arrest warrant on behalf of the State of Texas and presented it to the Mexican government.
He contends that he "was arrested on March 12, 2001, by Mexican authorities pursuant to the request
for provisional arrest." He also asserts that the "United States Department of Justice and the State
of Texas jointly prepared a formal request for extradition and presented it to the Mexican
government on or about April 26, 2001." Applicant declares that "due process warrants that [he]
receive jail time credit from March 12, 2001[,] through June 5, 2002," and that "[f]ailure to do so
would deny [him] due process of law."

 Based upon one of the affidavits it considered, the trial court found that TDCJ "did not lodge
a detainer against Applicant while he was in the custody of federal authorities." (2) The state asserts
that "there is no dispute that a detainer was not lodged against Applicant before or during the time
he was in actual custody of another jurisdiction," and that "Applicant fails to present any allegation
or evidence which reflects that a Texas detainer was lodged against Applicant while he was in the
custody of Mexican authorities." The state argues that "[i]n light of the indisputable fact that a
detainer or hold was never lodged against Applicant while he was incarcerated in the custody of U.S.
or Mexican authorities, Applicant fails to show that he is entitled to credit for the four hundred forty
nine (449) days that he was allegedly in the custody of Mexican authorities awaiting extradition." (3) 
The state ultimately asserts that, accordingly, "Applicant fails to show that he has been improperly
denied time credits towards his sentence in the primary case."

 Applicant points to an arrest warrant that is dated December 21, 1995. The warrant is written
in Spanish for presentation to the Mexican government and was obtained by the U.S. Department
of Justice in an effort to have applicant returned to TDCJ by Mexico. He also asserts, referring to
the affidavits from TDCJ officials, that federal authorities notified TDCJ officials that applicant had
been released and was in Mexico, and that on October 27, 1997, the Parole Division of TDCJ issued
an arrest warrant for him. The writ record also includes, as part of business records attached to an
affidavit from a deputy custodian of records of TDCJ-Parole Division, a letter from the Criminal
Division of the United States Department of Justice to the assistant general counsel for TDCJ. That
letter states that that office had "learned that Mexican authorities apprehended [applicant] on March
12, 2001, pursuant to the provisional arrest request [it] previously filed on behalf of the [TDCJ]." 
That letter also requested information from TDCJ so that a formal extradition package could be
prepared and presented to the government of Mexico. The response to that letter was filed by the
Harris County District Attorney's Office and forwarded to the Mexican government by the United
States Department of Justice on April 24, 2001. (4)

 Based upon the affidavits from TDCJ personnel, the trial court found that TDCJ "did not
lodge a detainer against [a]pplicant while he was in the custody of federal authorities." That finding
is supported by the record. The record also contains an affidavit from Edward McElyea, the assistant
director of the Review and Release Processing Section of TDCJ-Parole Division, which indicates
that no detainers were lodged against applicant.

 It is well settled that an individual is entitled to credit for all post-conviction time spent in
jail for that conviction. Hernandez v. State, 845 S.W.2d 913, 914 (Tex. Crim. App. 1993); Tex.
Code Crim. Proc., Article 42.03, § 2. In Bynum v. State, 772 S.W.2d 113, 114 (Tex. Crim. App.
1989), we stated that "[w]hen a person is confined by another jurisdiction, . . ., he is confined on
'said' cause only if a detainer or 'hold' is lodged against him by that jurisdiction." We explained
that "it is not the fact that the individual is currently serving a term in a penal institution which
determines whether credit should be given; rather, it is the fact that another jurisdiction has chosen
to lodge a hold against the individual." Id. at 115. Nevertheless, in Hannington v. State, 832 S.W.2d
355, 356 (Tex. Crim. App. 1992), we further explained that "[t]he existence of a detainer is merely
one means of establishing incarceration on a particular cause[, and n]o formal detainer is required
if it is established by some other means that the prisoner was detained in that cause[.]" In Ex parte
Kuban, 763 S.W.2d 426, 427 (Tex. Crim. App. 1989), we held that Kuban was entitled to credit for
time during which he was in custody in a California jail; even though there was "no evidence that
a detainer was ever filed," the record included a copy of his record from San Francisco indicating
that "he was arrested for nothing other than being a fugitive from justice in Texas," and there was
correspondence from the San Francisco sheriff's office verifying his arrest on a fugitive warrant from
Texas. We stated that "if an accused is held by that other state solely on charges pending in Texas,
he should be awarded credit for time served pursuant to his detention on those Texas charges." Id.
(Emphasis in original.)

 Although Hannington involved credit for time in jail prior to sentence, the principle that the
entry of a formal detainer is not the only way to show that a prisoner was detained in a particular
cause is equally applicable to situations involving post-sentencing incarceration. The writ record in
the instant cause does not reflect that applicant was held in Mexico on a detainer in this cause. In
fact, the record contains evidence via an affidavit from a TDCJ official that no such detainer was
issued. But, pursuant to Hannington, supra, applicant is permitted to show that he was detained in
this cause by some means other than formal detainer. We conclude that the letter from the U.S.
Department of Justice asserting that applicant was arrested by Mexican authorities based upon the
provisional arrest request that it had previously filed on behalf of TDCJ is such other means of
showing that he was detained in this cause when held by Mexican authorities. 

 The trial court's supplemental findings on this issue support applicant's claim: "Pending
extradition to the United States, Applicant was held from March 12, 2001[,] until June 4, 2002,
(approximately 14 months), by Mexican Authorities solely as a result of the fugitive arrest warrant."
The trial court concluded that applicant is entitled to time credit from the date of his arrest in Mexico
until returned to TDCJ-CID, specifically March 12, 2001, through June 4, 2002, a total of 450 days. 
Its supplemental findings and conclusions of law are supported by the record. 

 Under Kuban, applicant is entitled to receive jail-time credit for the time between his arrest
in Mexico and his return to the custody of TDCJ authorities. Relief is granted. TDCJ shall award
450 days of time credit to applicant for the time he served from the date of his arrest in Mexico until
he returned to TDCJ, March 12, 2001, through June 4, 2002. Copies of this opinion shall be sent
to TDCJ-CID, TDCJ's time credit office, and the Board of Pardons and Paroles.


Delivered: June 28, 2006

Publish
1. The parties and the trial court repeatedly refer to applicant's release from federal custody as "erroneous." 
However, it is clear from the record that applicant was properly released by the federal authorities because TDCJ
officials never lodged a detainer against applicant to ensure his return to TDCJ custody after the federal charges were
resolved. Without a detainer, the federal authorities had no legal basis for detaining applicant after his acquittal on
the federal charges.
2. The affidavits of TDCJ officials indicate that, in spite of its failure to lodge a detainer against applicant,
TDCJ continued to grant time credit to applicant while he was in federal custody.
3. The state's brief does not mention the ways, other than the lodging of a detainer, by which an applicant
can demonstrate that he was in custody on a given conviction. See Hannington and Ex parte Kuban, post.
4. The copy of this document provided to this Court by applicant is incomplete, with parts of two affidavits
missing.