

**NUMBER 13-07-00539-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**SALVADOR RODRIGUEZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 332nd District Court of Hidalgo County, Texas.**

# O P I N I O N

**Before Justices Rodriguez, Garza, and Vela**
**Opinion by Justice Garza**

Appellant, Salvador Rodriguez, was indicted with one count of murder, a first-degree felony.  *See* Tex. Penal Code Ann. § 19.02(b)(1), (c) (Vernon 2003).  A jury convicted Rodriguez of the lesser-included offense of voluntary manslaughter and sentenced him to twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a $10,000 fine.  *See id.* § 19.04(a) (providing that a person commits

manslaughter "if he recklessly causes the death of an individual").[1]  Rodriguez argues that the trial court committed reversible error by:  (1) denying him credit for time served in a Mexican prison; (2) failing to submit a "beyond a reasonable doubt instruction" at the punishment phase of the trial; and (3) allowing prejudicial photographs into evidence at the punishment phase of the trial.  We affirm.

## I. BACKGROUND

Because Rodriguez does not challenge the sufficiency of the evidence supporting his conviction, only a brief recitation of the facts is necessary.  *See* TEX. R. APP. P. 47.1. On August 4, 1991, Rodriguez shot and killed Jose Jorge Cardenas after Rodriguez observed Cardenas "making love" to Rodriguez's girlfriend, Monica Clark.  After shooting Cardenas, Rodriguez fled to Mexico.  In 2004, Rodriguez was apprehended by Mexican authorities and was placed in a Mexican jail.

On July 21, 2004, a Hidalgo County grand jury indicted Rodriguez with murder, a first-degree felony.  *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (c).  A capias warrant was issued on July 26, 2004, and extradition proceedings commenced.  Rodriguez was later extradited to the United States and was housed in a Harris County jail from March 2, 2006 to March 9, 2006.  He was transferred to a Hidalgo County jail on March 9, 2006, and was arraigned on March 17, 2006.  Trial commenced in the 332nd Judicial District Court of Hidalgo County on November 27, 2006.  The jury convicted Rodriguez of the lesser-included offense of voluntary manslaughter.  *See id.* § 19.04(a).

At the punishment hearing, the State moved the trial court to admit all of the

---

[1] Section 19.04(b) provides that manslaughter is a second-degree felony.  *See* TEX. PENAL CODE ANN. § 19.04(b) (Vernon 2003).  The punishment range for second-degree felonies is imprisonment for a term of not more than twenty years or less than two years.  *Id.* § 12.33(a) (Vernon 2003).

2

evidence considered by the jury at the guilt-innocence phase. Among the evidence presented at the guilt-innocence phase was testimony from Christina Pallasser, Rodriguez's girlfriend from 2001 to 2006, and several photographs of Cardenas's autopsy. Rodriguez renewed objections made during the guilt-innocence phase that: (1) portions of Pallasser's testimony were irrelevant, highly prejudicial, violated the parties' motions in limine, and allegedly was not provided in discovery; and (2) the probative value of introducing the photographs of Cardenas's autopsy was outweighed by the prejudicial effect and the photographs were cumulative of other evidence contained in the record.[2] *See* TEX. R. EVID. 402, 403.

With respect to Pallasser's testimony, Rodriguez complains about the following exchange that took place in the presence of the jury during the guilt-innocence phase:

| | |
|---|---|
| Q: [The State] | . . . . Why did you go visit him [Rodriguez] in jail [in Mexico]? |
| A: | So I—I visited him in jail to—to be safe. I mean— |
| Q: | What do you mean by being safe? |
| A: | I live in Mexico and—and the mother and he could do anything to me. Once he mentioned I could have sent the— |
| [Counsel for Rodriguez]: | Judge, I am—I am going— |
| A: | —person to kill you. |
| [Counsel for Rodriguez]: | —to object. This is— |
| THE COURT: | Sustained. |

---

[2] During the guilt-innocence phase, the trial court overruled Rodriguez's objection to the State's use of the autopsy photographs.

3

| [Counsel for Rodriguez]: | —nonresponsive. |
|---|---|
| THE COURT: | Move along, Counsel.  Move along, Counsel. |
| [The State]: | Yes.  Your Honor, actually I have a problem with that because I think she was explaining why she had to visit him in jail and she said she had to feel safe.[3] |

The trial court overruled Rodriguez's punishment phase objections.

The jury subsequently sentenced Rodriguez to twenty years' confinement. *See* TEX. PENAL CODE ANN. § 12.33(a), 19.04(b).  In calculating Rodriguez's credit for time served in jail, the trial court concluded that Rodriguez was entitled to 270 days for "time spent in jail in this cause."[4]  On July 31, 2008, Rodriguez filed a motion for a judgment *nunc pro tunc* to reflect additional credit for time served in a Mexican jail.  Specifically, Rodriguez argued that he was entitled to credit for the following time served:  (1) August 18, 2004 to March 2, 2006 in a Mexican jail; (2) March 2, 2006 to March 9, 2006 in a Harris County jail; and (3) March 9, 2006 to December 1, 2006 in a Hidalgo County jail.  In sum, Rodriguez requested that the trial court award him a total of 833 days' credit for time served in jail. The trial court did not rule on Rodriguez's *nunc pro tunc* motion.  The trial court certified Rodriguez's right to appeal on May 29, 2007.  This appeal ensued.

---

[3] At the guilt-innocence phase, Rodriguez also requested an instruction to disregard Pallasser's statement and a mistrial; the trial court denied both requests.

[4] During the punishment phase, the trial court noted the following with regard to the time Rodriguez spent in a Mexican jail:

| THE COURT: | What's the law on credit?  I don't want to give him credit for any time in Mexico, just the time here. |
|---|---|
| [The State]: | Your Honor— |
| THE COURT: | I'll give you credit for the time spent here.  Sit down. |

4

## A. Credit for Time Served in a Mexican Jail

In his first issue, Rodriguez argues that the trial court erred in denying him credit for the days he spent in a Mexican jail. The State asserts that it is not appropriate to raise this issue by direct appeal; rather, Rodriguez should have filed a petition for a writ of mandamus challenging the trial court's failure to rule on his *nunc pro tunc* motion. The State further asserts that the record does not contain sufficient information to determine the precise amount of jail credit to which Rodriguez is entitled.[5]

### 1. Applicable Law

Article 42.03, section 2(a) of the code of criminal procedure mandates that "[i]n all criminal cases the judge of the court in which the defendant was convicted *shall* give the defendant credit on his sentence for the time the defendant has spent . . . *in jail in said cause . . . from the time of arrest and confinement until his sentence by the trial court*." TEX. CODE CRIM. PROC. ANN. art. 42.03, § 2(a)(1) (Vernon Supp. 2008) (emphasis added). Consequently, "[t]he trial court is required to grant the [defendant] pre-sentence jail time when sentence is pronounced." *See Ex parte Ybarra*, 149 S.W.3d 147, 148 (Tex. Crim. App. 2004) (per curiam). Reflecting the mandatory, ministerial[6] nature of this duty, the court of criminal appeals has instructed lower courts that "[i]n the event the [trial] court fails to award such credit at the time the sentence is imposed, the trial court has the authority

---

[5] Although the State argues that the record before this Court does not establish the precise amount of jail credit to which Rodriguez is entitled, the State does concede that Rodriguez is entitled to some credit for time served in a Mexican jail.

[6] "An act is ministerial if it does not involve the exercise of any discretion and the relator has a clear right to relief. . . . The relief sought must be clear and indisputable, such that its merits are beyond dispute." *In re Daisy*, 156 S.W.3d 922, 924 (Tex. App.–Dallas 2005, orig. proceeding); *see Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007).

to correct the judgment to reflect the appropriate time credit by *nunc pro tunc* order and should do so." *Id.*; *see Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007) ("An incorrect calculation of the amount of back-time awarded to a defendant, or the omission of any statutory back-time in the judgment can be adjusted by a motion for judgment *nunc pro tunc . . . .*"); *see also In re Gomez*, 268 S.W.3d 262, 264 (Tex. App.–Austin 2008, orig. proceeding) ("[A] *nunc pro tunc* order is appropriate for fixing clerical errors in the record as to the judgment the trial court actually rendered . . . ."); *In re Daisy*, 156 S.W.3d 922, 924 (Tex. App.–Dallas 2005, orig. proceeding) ("Because the trial court is required to award credit for pre[-]sentence time served, the judge's failure to do so violates a ministerial duty.").

The court of criminal appeals has held that a defendant may file a petition for writ of mandamus challenging a trial court's denial of or refusal to rule on a motion for a *nunc pro tunc* order to add back-time. *See Ex parte Ybarra*, 149 S.W.3d at 149; *Ex parte Deeringer*, 210 S.W.3d 616, 617-18 & n.7 (Tex. Crim. App. 2006) ("[B]efore we will entertain a claim of the denial of pre-sentence jail time credit, an applicant must first attempt to correct the omission in the judgment by way of a motion *nunc pro tunc*, and that if the convicting court should decline to rule on the motion, the applicant must seek a writ of mandamus to the appropriate court of appeals to compel the convicting court to rule."); *see also In re Daisy*, 156 S.W.3d at 924 ("Further, if a motion for a *nunc pro tunc* order for back time credit is filed and the trial judge fails to respond, relief may be sought by petition for writ of mandamus to the court of appeals.").

### 2. Discussion

Here, Rodriguez filed a *nunc pro tunc* motion, requesting that the trial court grant

6

him additional credit for time served in a Mexican jail; however, the trial court has not ruled on this motion. The record does not reflect that Rodriguez filed a petition for writ of mandamus with this Court seeking to compel the trial court to rule on his *nunc pro tunc* motion. *See Ex parte Ybarra*, 149 S.W.3d at 149; *Ex parte Deeringer*, 210 S.W.3d at 617-18 & n.7; *see also In re Daisy*, 156 S.W.3d at 924. Because Rodriguez is entitled to all pre-sentence time served in jail pursuant to article 42.03, section 2(a) of the code of criminal procedure, the trial court violated its mandatory, ministerial duty to award Rodriguez such credit.[7] *See* TEX. CODE CRIM. PROC. ANN. art. 42.03, § 2(a)(1); *see also Ex parte Ybarra*, 149 S.W.3d at 148; *Collins*, 240 S.W.3d at 928; *In re Gomez*, 268 S.W.3d at 264; *In re Daisy*, 156 S.W.3d at 924. However, because the trial court has not ruled on Rodriguez's *nunc pro tunc* motion, we conclude that Rodriguez's use of this direct appeal to challenge the trial court's calculation of his jail time credit is improper.[8] *See Ex parte Ybarra*, 149 S.W.3d at 149; *Ex parte Deeringer*, 210 S.W.3d at 617-18 & n.7; *see also In re Daisy*, 156 S.W.3d at 924. Instead, this error should be corrected via a petition for writ of mandamus. *See Ex parte Ybarra*, 149 S.W.3d at 149; *Ex parte Deeringer*, 210 S.W.3d at 617-18 & n.7; *see also In re Daisy*, 156 S.W.3d at 924. Accordingly, we overrule his first

---

[7] In *Ex parte Rodriguez*, the Texas Court of Criminal Appeals held that the applicant was entitled "to receive jail-time credit for the time between his arrest in Mexico and his return to the custody of TDCJ [Texas Department of Criminal Justice] authorities." 195 S.W.3d 700, 704 (Tex. Crim. App. 2006).

[8] Ordinarily, "[a]ppellate courts have the power to reform whatever the trial court could have corrected by a judgment nunc pro tunc where the evidence necessary to correct the judgment appears in the record." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.–Dallas 1991, pet. ref'd) (citing *Rivera v. State*, 716 S.W.2d 68, 71 (Tex. App.–Dallas 1986, pet. ref'd)); *but see Ex parte Evans*, 964 S.W.2d 643, 645 n.2 (Tex. Crim. App. 1998) ("Our previous case law illustrates that when a defendant has been denied credit for jail time to which he is entitled, the preferred practice is for the trial court to enter a nunc pro tunc order authorizing credit for the appropriate time."); *see also Zavala v. State*, No. 13-98-395-CR, 2004 Tex. App. LEXIS 2270, at *15 n.5 (Tex. App.–Corpus Christi Mar. 11, 2004, no pet.) (not designated for publication). However, in the present case, we do not have enough information before us with which to accurately calculate the precise amount of jail time to which he is entitled.

issue on appeal.

**B. "Beyond a Reasonable Doubt" Instruction During the Punishment Phase**

In his second issue, Rodriguez contends that the trial court committed reversible error by failing to submit a "beyond a reasonable doubt" instruction at the punishment phase of the trial with respect to extraneous-offense evidence introduced—specifically, an allegation that Rodriguez had previously threatened to kill Pallasser. The State counters by arguing that there was no evidence admitted at the punishment phase that required such an instruction.

**1. Applicable Law**

At the punishment phase of a non-capital case, the use of extraneous-offense evidence is governed by article 37.07 of the code of criminal procedure. *Delgado v. State*, 235 S.W.3d 244, 252 (Tex. Crim. App. 2007); *see* TEX. CODE CRIM. PROC. ANN. art. 37.07 (Vernon Supp. 2008). Under this article, evidence of extraneous offenses—acts of misconduct not referenced in the charging instrument—is admissible at punishment for any relevant purpose but only if the State can prove those offenses beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *Delgado*, 235 S.W.3d at 252; *see Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999) ("In addition to the Rules of Evidence, article 37.07[,] section 3(a) governs the admissibility of evidence during the punishment stage . . . ."). This article is the "law applicable" to all non-capital punishment proceedings and must be included in the punishment charge regardless of whether it was requested. *Delgado*, 235 S.W.3d at 252.

**2. Discussion**

Here, the trial court did not include an article 37.07, section 3(a)(1) instruction in the

8

punishment charge. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). Moreover, the record does not reflect that Rodriguez objected at trial to the exclusion of such an instruction in the punishment charge. Nevertheless, Rodriguez argues that the instruction was required because the trial court admitted all the evidence adduced during the guilt-innocence phase at the punishment phase, including Pallasser's testimony about an alleged extraneous offense. The record reflects that Rodriguez's trial counsel objected to Pallasser's testimony regarding Rodriguez's alleged attempt to have her killed as being nonresponsive to the State's question. While Rodriguez's trial counsel was in the middle of his objection, Pallasser blurted out that she believed that Rodriguez could have sent someone to kill her. The trial court sustained Rodriguez's objection; thus, Pallasser's testimony regarding Rodriguez's alleged ability to have her killed was not admitted in evidence at either the guilt-innocence or the punishment phases of the trial.[9] Rodriguez does not direct us to, nor are we aware of, additional extraneous-offense evidence admitted during the punishment phase. Therefore, because no extraneous-offense evidence was admitted at the punishment phase, we hold that an article 37.07, section 3(a)(1) instruction was not required. *See id.* Accordingly, we overrule Rodriguez's second issue.

## C. Prejudicial Photographs at the Punishment Phase

In his third issue, Rodriguez asserts that the trial court committed reversible error by allowing autopsy photographs of the victim at the punishment phase of the trial. Specifically, Rodriguez contends that there was no dispute that he shot the victim, and that

---

[9] The record demonstrates that Pallasser's testimony regarding Rodriguez's alleged ability to have her killed was not referenced again during the punishment phase.

9

the State sought to introduce the photographs solely to inflame the jury. The State argues that Rodriguez failed to preserve this issue for appeal by failing to object. The State further argues that the trial court did not abuse its discretion in admitting the photographs.

### 1. Standard of Review

"The admissibility of a photograph is within the sound discretion of the trial judge." *Shuffield v. State*, 189 S.W.3d 782, 786 (Tex. Crim. App. 2006). Therefore, following an abuse of discretion standard, we should "do more than decide whether the trial judge did in fact conduct the required balancing between probative and prejudicial values; the trial court's determination must be reasonable in view of all relevant facts." *Id.* at 787 (internal quotations omitted).

### 2. Applicable Law

Rule of evidence 403 provides that relevant evidence, which is usually admissible, may be made inadmissible when its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. The rule 403 balancing test requires the evaluation of the following non-exclusive factors: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Shuffield*, 189 S.W.3d at 787 (citing *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1991) (op. on reh'g)). Specifically in the context of photographic evidence, these elements have been encapsulated into the following considerations:

> the number of photographs, the size of the photograph, whether it is in color or black and white, the detail shown in the photograph, whether the photograph is gruesome, whether the body is naked or clothed, and whether the body has been altered since the crime in some way that might enhance

the gruesomeness of the photograph to the appellant's detriment.

*Id.*; *see Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). "Generally, photographs are admissible if verbal testimony about the matters depicted in the photographs would be admissible and their probative value is not substantially outweighed by any of the Rule 403 counter-factors." *Threadgill v. State*, 146 S.W.3d 654, 671 (Tex. Crim. App. 2004).

### 3. Discussion

At the outset of our analysis of this issue, we address the State's argument that Rodriguez failed to object to the admission of the photographs at the punishment phase. *See* TEX. R. APP. P. 33.1(a)(1); *Moore v. State*, 999 S.W.2d 385, 402 (Tex. Crim. App. 1999). "[A] specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it." *Neal v. State*, 150 S.W.3d 169, 178 (Tex. Crim. App. 2004) (quoting *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977)).

> [A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

Here, Rodriguez objected to the admission of the photographs at the guilt-innocence phase. In his objection, Rodriguez argued that the photographs were highly prejudicial and cumulative of other evidence in the record. *See* TEX. R. EVID. 403. Later, at the punishment phase, Rodriguez renewed his rule 403 objection to the photographs. The trial court overruled Rodriguez's objections to the photographs at both phases. We therefore conclude that Rodriguez has preserved his complaint as to the admission of the

11

photographs. *See* TEX. R. APP. P. 33.1(a)(1); *see also Neal*, 150 S.W.3d at 178; *Lankston*, 827 S.W.2d at 909.

We must now determine whether the trial court abused its discretion in admitting the photographs. During the guilt-innocence phase, Fulgencio Salinas, M.D., a pathologist, used the photographs to explain his analysis of Cardenas's autopsy conducted by Ruben Santos, M.D. and to describe the injuries sustained by Cardenas.[10] The State then tendered the photographs—thirteen in all—for inclusion in the record. Rodriguez objected to the photographs as being cumulative and highly prejudicial, *see* TEX R. EVID. 403, and the trial court overruled Rodriguez's objection. However, the trial court did limit the State to only introducing photographs that were not cumulative; as a result, the State withdrew several of the tendered photographs.

On appeal, Rodriguez only complains about two of the photographs admitted—State's Exhibits 32 and 40. Rodriguez argues that the photographs were highly prejudicial because: (1) State's Exhibit 32 "is a color photograph of the deceased [Cardenas] who is bloody, swollen, and on an autopsy table"; and (2) State's Exhibit 40 "is a post[-]autopsy color photograph of the deceased with the skin pulled back from the chest exposing the ribs, muscle tissue, and fat tissue." Rodriguez further argues that these photographs were not necessary because it was undisputed that he had shot Cardenas and that Cardenas had died from the gunshot wounds.

Both State's Exhibits 32 and 40 are color photographs measuring three-and-one-half inches by five inches. State's Exhibit 32 depicts a gunshot wound Cardenas sustained to

---

[10] The testimony reveals that Dr. Santos died eight years prior to trial and, therefore, was not available to testify as to the autopsy.

the neck. Cardenas is clothed in this picture, and the picture is not cumulative of other evidence. State's Exhibit 40, on the other hand, illustrates: (1) the size of the wound caused by the bullet that passed through Cardenas's muscle tissue; and (2) that Cardenas sustained a fractured rib as a result of the bullet passing through.[11] Dr. Salinas was unsure if State's Exhibit 40 depicted parts of the bullet lodged in Cardenas's muscle tissue. State's Exhibit 40 is not cumulative of other evidence. Both of these pictures are somewhat gruesome. That is to say, they are both disagreeable to look at, but they depict nothing more than the reality of the brutal crime committed. *See Shuffield*, 189 S.W.3d at 787-88. Nonetheless, the photographs were probative of Rodriguez's use of a deadly weapon, the type of wounds sustained, and the brutality and seriousness of the crime, which bears on the issues of guilt and punishment.

> In addressing similar photographs, the court of criminal appeals noted that:
>
> The photographs are powerful visual evidence, probative of various aspects of the State's theory of the offense including the brutality and heinousness of the offense. Appellant must realize that it is precisely the quality which we describe as "powerful" which gives rise to his arguments that the photographs are prejudicially inflammatory. *But when the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence. A trial court does not err merely because it admits into evidence photographs which are gruesome.*

*Sonnier*, 913 S.W.2d at 519 (citation omitted) (emphasis added). Because these photographs are not overly gruesome and were necessary for the State in developing its case, we find that the photographs did not pose the potential of impressing the jury in some

---

[11] Dr. Salinas noted in his testimony that by measuring the size of the gunshot wound, investigators can often determine the caliber of the firearm used. This statement is noteworthy because on November 30, 2006, Rodriguez and the State entered into a stipulation of evidence that the projectiles recovered from the body of Cardenas during the autopsy were fired from a .41 Magnum Ruger Blackhawk handgun that was turned over to the police by Rodriguez.

13

irrational way. *See Shuffield*, 189 S.W.3d at 788. Moreover, because the photographs emanate "from nothing more than what the defendant [Rodriguez] has himself done," we cannot hold that the trial court has abused its discretion. *See id.* Accordingly, we overrule Rodriguez's third issue.

## IV. CONCLUSION

Having overruled all of Rodriguez's issues on appeal, we affirm the judgment of the trial court.

_____

_____
DORI CONTRERAS GARZA,
Justice

Publish.
TEX. R. APP. P. 47.2(b).
Opinion delivered and filed
this the 25th day of June, 2009.