**AFFIRM; and Opinion Filed July 17, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00625-CR**

**DEMETRIA YUVETTE OLIVER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F08-53094-J**

## MEMORANDUM OPINION

Before Justices Moseley, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

The State indicted appellant for murder. The jury rejected appellant's defensive claims, convicted her of the lesser included offense of manslaughter, and assessed her punishment at 15 years' imprisonment and a $5,000 fine. On appeal, appellant argues that the evidence is insufficient to support the jury's rejection of her defenses and the trial court erred in ruling on the admission of certain evidence. For the following reasons, we affirm the trial court's judgment. We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in the case is well settled. TEX. R. APP. P. 47.4.

### SUFFICIENCY OF THE EVIDENCE

In issues one and two, appellant challenges the sufficiency of the evidence to support the jury's implied rejection of her claims of self-defense and defense of an occupied habitation.

**Standard of Review and Applicable Law**

When an appellant challenges the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and rejected the appellant's defensive claims beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)); *see Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). If the evidence supports conflicting inferences, we "must 'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to that determination." *Wise*, 364 S.W.3d at 903 (quoting *Jackson*, 443 U.S. at 326). This standard is the same for both direct and circumstantial evidence. *Id*.

A person commits manslaughter if the person recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). A person acts recklessly with respect to the result of her conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id*. § 6.03(c); *Schroeder v. State*, 123 S.W.3d 398, 400–01 (Tex. Crim. App. 2003).

A person is justified in using deadly force against another if she would be justified in using force against the person and she reasonably believes the force is immediately necessary to protect herself against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. §§ 9.31(a), .32. The actor's belief that the use of deadly force is immediately necessary is presumed reasonable if she knew or had reason to believe that the other person "unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation . . . ." *Id*. § 9.32(b)(1)(A). Her belief is also presumed reasonable if she knew or had reason to believe that the other person was committing or attempting to commit murder. *Id*. § 9.32(b)(1)(C); *see id*. § 9.31(a)(1)(C). Under either self-defense or defense of

occupied habitation, the actor must not have provoked the person against whom the force was used. *Id*. § 9.32(b)(2). Additionally, the use of deadly force against another is not justified in response to verbal provocation alone. *Id*. § 9.31(b)(1).

When an appellant presents evidence that raises self-defense and defense of occupied habitation, the burden is on the State to disprove the defensive claims beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 913–14. Whether the State satisfied its burden is a question of fact for the jury. *Kizart v. State*, 811 S.W.2d 137, 139 (Tex. App.—Dallas 1991, no pet.). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Id*. The jury may accept or reject any part or all of the witnesses' testimony. *Id*.

### Analysis

We examine the evidence in the light most favorable to the verdict. The evidence showed that appellant and the deceased, Ricky Mumphrey, were married in the early 1990s and divorced in 2005. Despite the divorce, they had an on-again, off-again relationship. They had a daughter together, and Mumphrey took her to school every day. At the time of the offense, Mumphrey was spending the night at appellant's house almost every night.

On this particular day, Mumphrey did not pick up their daughter for school; his mother did. Mumphrey called appellant later that morning and told her he had been arrested for prostitution. Appellant was hurt and told him "it was over," not to call anymore, and their "relationship is through." Mumphrey said he needed to talk to her, that they needed "to sit down and talk about this." She said no. He said "[h]e just wanted to talk" and she said no. Appellant said "when he said he was coming over," she used a hammer to break Mumphrey's 52-inch television, washer, dryer, and table that were still at her house.

At trial, appellant testified that when Mumphrey saw his broken television, he became angry and said, "I worked too hard for my sh– and you bust my TV? All I wanna do is talk. We

can talk. We can talk. I work too hard for my sh–, bitch. I'ma kill you." The evidence conflicted about whether the argument started outside or in the house. Appellant went to her bedroom to get her handgun, which she kept loaded, and she said Mumphrey followed her in the house. When she got the gun, he headed toward the door and she followed. The two were outside at this point, and the arguing continued.

Two neighbors heard three gunshots, saw appellant and Mumphrey outside, and saw appellant holding a gun. One neighbor saw appellant shoot at Mumphrey another two to four times. Appellant fired the gun at least six times. One of the bullets hit Mumphrey's left leg and severed a major artery near the knee. Another hit a different neighbor's house. When appellant ran out of bullets, she told Mumphrey she was "gonna reload on [his] ass." She went inside, reloaded the magazine with four cartridges, and came back outside. Meanwhile, Mumphrey had limped to his car and fell unconscious. The neighbors called 911, and their calls were recorded and played for the jury. The ambulance took Mumphrey to the hospital, but he bled to death from his injuries.

Appellant did not recall many details of the incident and gave conflicting accounts of the shooting. In her defense, she presented evidence that Mumphrey routinely physically and verbally abused her throughout their relationship. She described the abuse as "[c]hoking, bruises on my body, sometimes my face" and said Mumphrey hit her "body, legs, upper body" and called her bad "names." She also presented evidence that she applied for and received protective orders against Mumphrey. She testified that Mumphrey often threatened her with a knife, gun, or other weapon. She said he was "mean" and would "[s]lap, argue." She also said that, after their divorce, Mumphrey threatened her with "deadly consequences" if she dated anyone else. During the interrogation that was recorded and played for the jury, the detective told appellant he found one report where she called the police about Mumphrey, but he found five reports where

–4–

Mumphrey called the police about her, including two where she threatened him with a gun and one where she threw a brick through his windshield. She said she did not file complaints against Mumphrey because she was trying to make their marriage work.

Appellant testified that she and Mumphrey "were dating" in 2007 and 2008 and that he was spending the night with her almost daily. She said the physical abuse had ended during this time, but Mumphrey continued to verbally abuse her. She testified that on the day of the shooting, she and Mumphrey "tussled" on the ground. She said they fought for the gun and it accidentally discharged. But the evidence showed that Mumphrey did not have gunshot residue on either hand. Appellant also testified that she thought Mumphrey was going to kill her, that he tried to choke her, and she feared for her life. She said Mumphrey reached for his pocket, and she knew he kept a pocketknife there. But the evidence showed Mumphrey did not have a weapon. And the detective who interrogated appellant after the shooting testified that he did not see any injuries on appellant's neck and nothing on her person or clothes that indicated she had been tussling on the ground. Appellant testified that her neck swelled after she was jailed, but she did not have any way to take a picture.

Appellant said she did not intend to kill Mumphrey. She said when she saw that "he was actually hurt," she "ran and got [her] cell phone," tried to give him CPR, and tried to put a tourniquet on his calf. She did not realize he had been shot in the thigh.

A firearms expert testified that appellant's gun had a "heavier trigger pull" and required over 14 pounds of force to pull the trigger. The medical examiner testified that one of the gunshot wounds was on Mumphrey's left thigh and another was on his right leg below the knee. She said both wounds could have been caused by the same bullet and were consistent with him walking or running. The tests on Mumphrey's jeans showed that the muzzle of the gun was more than 36 inches from his legs when he was shot.

In rebuttal, the State presented evidence that Mumphrey was a peaceful, law-abiding citizen. A friend of Mumphrey's testified that he saw appellant slapping and hitting Mumphrey during an argument and that Mumphrey did not fight back. The friend was also at Mumphrey's house when appellant threw a brick into Mumphrey's windshield.

Having examined all the evidence, we conclude that a reasonable jury could have rejected appellant's defensive claims beyond a reasonable doubt. The evidence about the shooting was conflicting and no weapons were found on Mumphrey. The jury could have reasonably concluded that appellant was not justified in using deadly force against Mumphrey. We resolve issues one and two against appellant.

## EVIDENTIARY RULINGS

In issues three, four, and five appellant complains about the trial court's evidentiary rulings with regard to autopsy photographs, the State's cross-examination of appellant's daughter, and the exclusion of evidence that appellant had been treated for post-traumatic stress disorder. We review a trial court's evidentiary rulings for an abuse of discretion and will not disturb those rulings unless they lie outside the zone of reasonable disagreement. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

### Autopsy Photographs

In issue three, appellant argues that the trial court erred by admitting three autopsy photographs in evidence over her rule 403 objection. The State argues that appellant's objection that the photographs were "highly prejudicial" did not preserve the issue for our review, but we disagree.

The trial court initially heard appellant's objections to the autopsy photographs at the bench and the objections were not recorded. Later, appellant's counsel made a record of the objections. She described the offending portions of the photographs in detail and objected

because they were offered "to inflame the jury" and were "highly prejudicial" and "very inflammatory." We conclude that appellant's objections in context were sufficient to preserve an objection under rule 403. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Rodriguez v. State*, 398 S.W.3d 246, 254 (Tex. App.—Corpus Christi 2009, no pet.).

Rule 403 provides for the exclusion of relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice from its admission. *See* TEX. R. EVID. 403. A trial court must balance many factors in deciding whether to admit autopsy photographs, "including: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010). The Texas Court of Criminal Appeals has said that "[a]utopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself." *Id.*

The first photograph is a close up of Mumphrey's face with his eyes open and with the autopsy number at the bottom of the photograph. Appellant argued that the photograph did not show any injury and it was offered solely to inflame the jury and was highly prejudicial. The State argued that the photograph was necessary to identify the deceased and to link him with the results of all forensics tests run under that same identifying number. The photograph is no more gruesome than other photographs admitted without objection showing Mumphrey with his eyes open.

The next two photographs are pictures of Mumphrey's naked body in the condition in which he arrived at the medical examiner's office. He has an intubation tube strapped to his mouth, monitor pads on his chest, intravenous tubes in his legs, and bags over his hands and feet. Appellant's counsel objected to the photographs because they showed "evidence of medical

treatment." Counsel said the photographs made Mumphrey look "very objectified, like a trussed-up turkey for Thanksgiving dinner, and that is very inflammatory and prejudicial against my client in front of the jury." The record does not indicate the size of the photographs and does not state whether the originals were black-and-white or color.

The State presented nineteen pictures of Mumphrey's body, most of which depicted the wounds in his legs. Four photographs showed Mumphrey's naked body, and two, the ones to which appellant objected, showed the medical equipment still attached and the bags that were placed around his hands and feet after he died. The two photographs to which appellant objected are no more gruesome than the other two photographs admitted without objection. The medical examiner testified that the photographs showed the medical treatment used in an attempt to save Mumphrey's life, and the State argued that the photographs also showed the steps taken to preserve evidence that may have been on Mumphrey's hands and feet.

The photographs demonstrate the reality of the crime that was committed, the measures taken to save Mumphrey's life, and the steps taken to preserve evidence after those measures failed. For these reasons, the photographs "are powerful visual evidence, probative of various aspects of the State's case." *See Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). We conclude that the trial court did not abuse its discretion in balancing the factors in favor of admission. We resolve appellant's third issue against her.

**Cross-Examination of Appellant's Daughter**

In issue four, appellant argues that the trial court erred by allowing the State to cross-examine her daughter, Rickera Mumphrey, about a lawsuit she filed against her grandmother, the deceased's mother. The State asked Rickera whether she had sued her grandmother recently and appellant objected to relevance. The trial court overruled the objection, and Rickera answered by stating that she did not understand the question. When the State asked the question again,

appellant did not object and the witness answered the question without objection. Defense counsel also elicited more detailed information about the lawsuit on redirect examination.

When a party objects to evidence, she must continue to object each time the allegedly inadmissible evidence is offered in order to preserve the error for our review. *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). Although there are exceptions to this rule for a running objection and an objection made in a hearing outside the presence of the jury, neither exception applies here. *See id.* Additionally, appellant elicited more detailed evidence about the lawsuit without having preserved her objection to the State's cross-examination. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) (explaining when examination of witness does not waive error); *Ethington v. State*, 819 S.W.2d 854, 858–60 (Tex. Crim. App. 1991) (same).

We conclude that appellant did not preserve this issue for our review because she did not continue to object each time the evidence was offered. We resolve issue four against appellant.

### Testimony about Post-Traumatic Stress Disorder

In issue five, appellant argues that the trial court erred by excluding the testimony of a defense witness, a nurse practitioner who treated appellant for post-traumatic stress disorder. Appellant argues that the testimony and related medical records were relevant to negate the *mens rea* necessary to convict her for Mumphrey's death. The State argues that this argument is made for the first time on appeal and is not preserved. We agree the issue is not preserved.

The trial court conducted a hearing outside the presence of the jury to determine the admissibility of the nurse practitioner's testimony. The evidence at the hearing showed that the nurse practitioner began to treat appellant about six months after the shooting. The trial court sustained the State's objection to the evidence, stating that the witness's treatment of appellant after the date of the offense was not relevant to appellant's guilt or innocence. Later at trial, appellant argued that the State had opened the door to the admission of the evidence when it

–9–

"called into question whether or not [a family violence expert] was a psychologist, psychiatrist, [and] whether she treated [appellant]." Counsel argued that "[y]ou have testimony before you from a nurse practitioner in psychiatry who treated [appellant] and, certainly, in opening that door, her testimony is now admissible." The trial court disagreed that the door had been opened and let the ruling stand to exclude the nurse practitioner's testimony.

On appeal, appellant argues that the evidence from the nurse practitioner was admissible to negate the *mens rea* required for a conviction. Appellant did not make this argument below and, consequently, did not preserve it for appellate review. *See* TEX. R. APP. P. 33.1. We resolve issue five against appellant.

## CONCLUSION

Having resolved all of appellant's issues against her, we affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.7(a)

120625F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DEMETRIA YUVETTE OLIVER,
Appellant

No. 05-12-00625-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F08-53094-J.
Opinion delivered by Justice Lang-Miers,
Justices Moseley and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of July, 2013.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE

–11–